UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ROBERT BONDARENOK,

       Plaintiff                           Civil Action No. 19-12480

v.                                  HON.  LINDA V. PARKER
                                     U.S. District Judge
                                     HON. R.  STEVEN WHALEN
COMMISSIONER OF SOCIAL         U.S. Magistrate Judge
SECURITY,

       Defendant.

_____/

## REPORT AND RECOMMENDATION

Plaintiff Robert Bondarenok brings this action under 42 U.S.C. §405(g), challenging a final decision of Defendant Commissioner denying his application for Disability Insurance Benefits under Title II of the Social Security Act.  Both parties have filed summary judgment motions which have been referred for a Report and Recommendation under 28 U.S.C. § 636(b)(1)(B).  For the reasons set forth below, I recommend that Defendant's motion for summary judgment [Docket #16] be GRANTED and that Plaintiff's motion [Docket #15] be DENIED.

## I.  PROCEDURAL HISTORY

On May 29, 2015 Plaintiff filed an application for Disability Insurance Benefits ("DIB") alleging disability as of March 11, 2015 (Tr. 288).  Following the initial denial of

-1-

benefits, Plaintiff requested an administrative hearing, held on October 26, 2016 in Detroit, Michigan (Tr. 136).  Administrative Law Judge ("ALJ") Jeanne M. VanderHeide presided. Following the hearing, ALJ VanderHeide issued an administrative opinion on February 27, 2017, finding that Plaintiff was not disabled between the alleged onset date and the expiration of entitlement to DIB date of December 31, 2015 (Tr. 144).

On October 26, 2017, the Appeals Council remanded the case to the ALJ for further fact-finding, noting that Plaintiff's entitlement to DIB actually expired on September 30, 2017 (Tr. 150).  The Appeals Council ordered that evidence relating to Plaintiff's condition up to September 30, 2017 be considered in determining whether he was disabled (Tr. 150). The Appeals Council directed that upon remand, the ALJ discuss her findings regarding Plaintiff's residual capacity for work and obtain supplemental evidence from a vocational expert ("VE").

Following remand, a second hearing was held on May 30, 2018 (Tr. 102-124). Plaintiff, represented by attorney Adam Banton, testified, as did  VE Suman Srinivasan (Tr. 106-121, 121-124).  On August 1, 2018, ALJ VanderHeide found that Plaintiff was not disabled from the alleged onset of disability date through September 30, 2017 (Tr. 87-97). On July 6, 2019 the Appeals Council denied review of the ALJ's decision (Tr. 1-4).  Plaintiff filed for judicial review of the final decision on August 23, 2019.

## II.  BACKGROUND FACTS

Plaintiff, born December 7, 1959  was 58 at the time of the ALJ's determination (Tr.

97, 288).  He completed twelfth grade and worked previously as a sheet metal worker, stock

person, and counter helper (Tr. 335).  He alleges disability as a result of bulging spinal discs,

osteoarthritis of the spine, Carpal Tunnel Syndrome ("CTS"), and anxiety (Tr. 334).

### A.      Plaintiff's Testimony

Plaintiff offered the following testimony:

He lived in a house with his mother-in-law, wife, and sister-in-law (Tr. 107).  He last

worked as a counter helper at a pool hall and before that, as a sheet metal worker (Tr. 108).

The counter helper position allowed him to change positions from sitting to standing as

needed (Tr. 108).  Plaintiff opined that he would be unable to return to the counter helper

position due to body pain and anxiety (Tr. 108-109).  He lost the counter helper job due to

his supervisor's erroneous belief that Plaintiff stole a pool cue (Tr. 110).

Plaintiff obtained relief from anxiety with Xanax, but the currently prescribed

medication of Fluoxetine did not help his condition (Tr. 109).  Due to arthritis, Plaintiff

experienced up to level "nine" out of "ten" pain of the neck, back, hands, knees, feet, ankles,

and wrists (Tr. 109).  His pain at the hearing was a "nine" due to impending rain but on

average, was a "seven" or "eight" (Tr. 109).  He took Norco and Motrin for the body pain

and Tizanidine and Excedrin for migraine headaches (Tr. 110).  He denied medication side

effects (Tr. 111).  For the condition of CTS, he used a wrist brace while sleeping (Tr. 112).

His pain was eased by reclining and worsened by bending (Tr. 110).  He had abandoned the

use of a TENS unit because it did not improve his condition (Tr. 112).  He saw his primary

-3-

doctor every four to five months and his psychiatrist every three months (Tr. 112).

Without the use of Xanax, Plaintiff was unable to sleep more than two hours a night, but while using Xanax could sleep eight hours (Tr. 113).  He took care of his personal needs, but noted that shaving and putting on his socks and shoes caused back pain (Tr. 113).  Despite constant pain, Plaintiff continued to play pool twice a week (Tr. 113-114).  He was able to drive himself to the hearing (Tr. 114).  He admitted that along with his mother-in-law and wife, he helped take care of his sister-in-law who was dying of cancer by taking her to doctors' appointments (Tr. 115).

Plaintiff did not belong to social organizations (Tr. 116).  He was unable to sit or stand for more than 20 minutes or walk for more than two blocks (Tr. 117).  He was unable to lift more than 20 pounds (on a rare occasion) (Tr. 117).  He experienced mental confusion since ceasing Xanax use (Tr. 118).  While shopping, he sometimes became irritated with his wife because she "wanted to stop and look at something," whereas he would typically "just go in, grab what I need, get out" (Tr. 119).  He disliked being around people, particularly strangers (Tr. 119).  He did not experience anxiety while playing pool because he played with others in small groups (Tr. 120).  During his stint as a counter helper, he coped with the stress of the position by using Xanax (Tr. 120).

### B. Medical Evidence[1]

### 1. Treating Sources

A September, 2014 MRI of the lumbar spine showed hypertrophic facet joints at L2-L3, L3-L-4, and L4-L5 "compounded by" mild bulging of the disc at L4-L5 causing impingement of the nerve root sleeves (Tr. 465). An MRI of the cervical spine from the same day showed mild bulging at C3-C4, C5-C6, and C6-C7 (Tr. 465). November, 2014 records note that Plaintiff's pain was "completely nonradicular" and that he declined recommendations for physical therapy and yoga (Tr. 450). Plaintiff was fully oriented with a good memory but appeared anxious and depressed (Tr. 449-450). He demonstrated a slow antalgic gait (Tr. 449). Plaintiff was advised to quit smoking (Tr. 443). Mental health records from the same month note that Plaintiff's Xanax dosage was decreased due to the use of Vicodin (Tr. 442). He exhibited a normal gait (Tr. 441). He was diagnosed with a panic disorder without agoraphobia (Tr. 441). Plaintiff appeared pleasant and cooperative (Tr. 441).

March, 2015 psychiatric progress records state that Plaintiff recently lost his job at a pool hall and was looking for another job (Tr. 416). In May, 2015, he exhibited left side lower extremity radiculopathy (Tr. 603). In June, 2015, Plaintiff reported neck and shoulder pain but good results from medication (Tr. 412). In July, 2015, Plaintiff reported that he was

---

[1]Records pertaining to Plaintiff's condition prior to the alleged onset of disability date of March 11, 2015 or after the September 31, 2017 expiration of entitlement to benefits are included for background purposes only.

still unemployed but babysat during the day for his friend's son (Tr. 396). Plaintiff was "somewhat resistant to a further wean on his Xanax" (Tr. 396). The following month, Plaintiff demonstrated normal muscle bulk and tone with full strength in all extremities (Tr. 597). He exhibited a normal gait but neurological signs of the ankles and feet (Tr. 597). In December, 2015, Plaintiff reported continuing lower and upper back pain and right shoulder pain (Tr. 637). He reported that he was unable to work due to "severe and chronic pain" (Tr. 641). He was diagnosed with moderate psychological limitation due to anxiety, chronic pain, and housing problems (Tr. 644).

A February, 2016 MRI of the right shoulder showed a impingement syndrome with a small rotator cuff tear (Tr. 552, 568). Plaintiff was referred for an occupational therapy consultation (Tr. 593). Plaintiff reported sleep disturbances due to shoulder pain (Tr. 566). In March, 2016, Plaintiff showed good eye contact and grooming and a cooperative demeanor but reported that he struggled with anxiety (Tr. 606-607). He exhibited a normal gait (Tr. 606). He was advised to stop smoking (Tr. 614). June, 2016 psychiatric treating records note that he was well groomed with good eye contact and clear speech (Tr. 572). He exhibited a stable gait and an anxious mood and affect (Tr. 572). Plaintiff reported that his shoulder no longer hurt (Tr. 574). The same month, Plaintiff requested a Xanax refill to quell nausea and anxiety (Tr. 581). He denied headaches (Tr. 581). Hospital records note a normal mood and affect at the time of discharge (Tr. 591). September, 2016 imaging studies of the bilateral knees showed only minimal joint space narrowing (Tr. 647).

-6-

December, 2016 EMG studies of the lower extremities showed isolated but chronic denervation of the feet (Tr. 649).

In April, 2017, Plaintiff sought emergency treatment for a Xanax refill (Tr. 690). A review of systems noted no muscle weakness or joint pain and a stable gait (Tr. 692). May, 2017 records noted that Plaintiff declined recommendations for physical therapy, yoga, and acupuncture (Tr. 688). He was advised to use a TENS unit and heating pad as needed (Tr. 688). In July, 2017, Plaintiff was fitted for a right wrist brace for use at night and during activities "which aggravate the symptoms" (Tr. 680). Plaintiff demonstrated full muscle strength (Tr. 688).

In January, 2018, Plaintiff reported that he and his wife were living with his mother-in-law and sister-in-law (Tr. 672). Plaintiff reported that he drove his sister-in-law to doctors' appointments (Tr. 672). In February, 2018, Plaintiff described his condition as "fair" with continued low back pain, shoulder pain, and anxiety with agoraphobia (Tr. 665). He reported good results from pain medication (Tr. 667). Plaintiff was cooperative but "was arguing about getting [Xanax]" (Tr. 674). He exhibited a normal gait (Tr. 674). He declined an offer of group therapy (Tr. 674). He exhibited mild psychological limitation (Tr. 675).

### 2. Non-Treating Sources

In August, 2015, psychiatrist Thomas Tsai, M.D. performed a non-examining assessment of the treating and consultative records on behalf of the SSA, finding insufficient evidence of work-related limitation due to a mental disorder (Tr. 129).

### C.   Vocational Expert Testimony

VE Suman Srinivasan classified Plaintiff's past relevant work as a sheet metal worker as semiskilled and exertionally medium and work as a cashier as unskilled/light[2] (Tr. 123, 381).

The ALJ posed the following question to the VE, describing an individual of Plaintiff's age, education, and work background:

> [L]imited to light work . . . . However the individual would require a sit/stand option, sitting or standing alternatively, not more than 20 to 30 minutes in either position.  No climbing ladders, ropes or scaffolds.  Occasional climbing of ramps or stairs.  Occasional stooping, crouching, kneeling.  No crawling.  The individual should avoid more than occasional exposure to extreme cold or wetness and humidity.  The individual would be limited to simple, routine tasks, with no fast paced production work.  Given those limitations, could such an individual perform any of the claimant's past work? (Tr. 123).

The VE found that the above restrictions would preclude Plaintiff's past relevant work as a sheet metal worker but would allow for the work of a counter helper as the position was performed by Plaintiff (Tr. 123-124). The VE testified further that if the individual were also limited to occasional interaction with the public and coworkers, the counter helper job, as described, would be eliminated (Tr. 124).  The VE stated that her testimony was consistent

---

[2]

20 C.F.R. § 404.1567(a-d) defines *sedentary* work as "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools;  *light* work as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds;" *medium* work as "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds;" and that exertionally *heavy*  work "involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds.

with the information found in the *Dictionary of Occupational Titles* ("*DOT*") (Tr. 121).

### D. The ALJ's Decision

Citing the medical records, ALJ VanderHeide found that Plaintiff experienced the severe impairments of  "degenerative disc disease of the lumbar and cervical spine; mild degenerative joint disease of the bilateral knees; and generalized anxiety disorder" but that none of the conditions met or medically equaled the impairments found in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 89-90).  The ALJ found that as a result of anxiety, Plaintiff experienced mild limitation in understanding, remembering, or applying information and interacting with others; moderate limitation in concentration, persistence, or pace; and no limitation in adaptation (Tr. 91-92).  The ALJ found that the conditions of right shoulder disorder, agoraphobia, and CTS were non-severe (Tr. 90).

The ALJ found that Plaintiff retained the Residual Functional Capacity ("RFC") for light work with the following additional restrictions:

> [H]e would require the ability to sit or stand alternatively for no more than 20 to 30 minutes in either position.  He can never climb ladders, ropes, and scaffolds.  He can occasionally climb ramps or stairs. He can occasionally stoop, kneel, and crouch.  He can never crawl.  He should avoid more than occasional exposure to extreme cold, wetness, or humidity.  He is limited to simple, routine tasks with no fast-paced production work (Tr. 92-93).

Citing the VE's findings (Tr. 123-124), the ALJ determined that Plaintiff could perform his past relevant work as a counter helper (cashier) as the job was actually performed[3] (Tr.

---

[3]    A Step Four determination can be supported by the finding that claimant can perform her past relevant work as "actually performed," or, "as generally required by employers

96).

The ALJ discounted Plaintiff's alleged degree of limitation.  As to the physical conditions, the ALJ noted that Plaintiff had "generally normal" examinations with normal muscle tone and strength in all extremities (Tr. 94).  The ALJ cited observations of a normal gait without numbness or tingling (Tr. 94).  She noted that Plaintiff had obtained good results with medication for back and neck pain and had received "largely conservative" treatment (Tr. 94).  She noted that Plaintiff had "been offered, but [] refused, yoga, pain psychology, physical therapy, and acupuncture" treatment (Tr. 95).  The ALJ observed that Plaintiff's regular activities included performing household chores, driving, carrying groceries, taking out trash, and playing pool (Tr. 95).

As to anxiety, the ALJ noted that mental status examinations were "largely normal" with  good results from medication (Tr. 95).  She observed that Plaintiff denied depression on multiple occasions (Tr. 95).  She noted that although he had recently argued about his medication, treating sources noted that he did not appear to experience anxiety (Tr. 95).  She again cited Plaintiff's regular activities, noting that he played pool at a bar two times a week at a bar, babysat for a friend, helped his mother-in-law with household tasks, and helped take care of his sister-in-law (Tr. 96).

---

throughout the national economy." SSR 82–61, 1982 WL 31387, *2 (1982). At Step Four of the sequential analysis, the claimant "bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work" either as previously performed or as generally required in the national economy. *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir.2003).

-10-

### III.  STANDARD OF REVIEW

"Under the substantial evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Biestek v. Berryhill*, — U.S. —, 139 S.Ct. 1148, 1154 (2019)(punctuation altered)(*citing Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938))(emphasis deleted).  The district court reviews the final decision of the Commissioner to determine whether it is supported by substantial evidence. *Biestek* at 139 S. Ct. at 1152; 42 U.S.C. §405(g).    "Substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers v. Commissioner of Social Sec*., 486 F.3d 234, 241 (6th Cir. 2007)(*citing Cutlip v. Sec'y of Health & Human Servs*., 25 F.3d 284, 286 (6th Cir.1994)).

The standard of review is deferential and "presupposes that there is a 'zone of choice' within which decision makers can go either way, without interference from the courts." *Mullen v. Bowen,*  800 F.2d 535, 545 (6th Cir. 1986)(*en banc*).  Where substantial evidence supports the ALJ's decision, the reviewing court "defers to that finding even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Commissioner Of Social Sec.*, 581 F.3d 399, 406 (6th Cir. 2009)(*citing Key v. Callahan*, 109 F.3d 270, 273 (6th Cir.1997)).    However, in determining whether the evidence is substantial, the court must "take into account

whatever in the record fairly detracts from its weight." *Wages v. Secretary of Health &
Human Services*, 755 F.2d 495, 497 (6th Cir. 1985). The court must examine the
administrative record as a whole, and may look to any evidence in the record, regardless
of whether it has been cited by the ALJ. *Walker v. Secretary of Health and Human
Services*, 884 F.2d 241, 245 (6th Cir. 1989).

## IV.  FRAMEWORK FOR DISABILITY DETERMINATIONS

Disability is defined in the Social Security Act as the "inability to engage in any
substantial gainful activity by reason of any medically determinable physical or mental
impairment which can be expected to result in death or which has lasted or can be
expected to last for a continuous period of not less than 12 months." 42 U.S.C.
§423(d)(1)(A). In evaluating whether a claimant is disabled, the Commissioner is to
consider, in sequence, whether the claimant: 1) worked during the alleged period of
disability; 2) has a severe impairment; 3) has an impairment that meets or equals the
requirements of an impairment listed in the regulations; 4) can return to past relevant
work; and 5) if not, whether he or she can perform other work in the national economy.
20 C.F.R. §416.920(a).  The Plaintiff has the burden of proof at steps one through four,
but the burden shifts to the Commissioner at step five to demonstrate that,
"notwithstanding the claimant's impairment, he retains the residual functional capacity to
perform specific jobs existing in the national economy." *Her v. Commissioner of Social
Sec.*, 203 F.3d 388, 391–92 (6th Cir. 1999).

-12-

## V.  ANALYSIS

In his motion for summary judgment, Plaintiff argues that the hypothetical question posed to the VE at the hearing and by extension the RFC found in the administrative opinion did not account for his moderate limitation in concentration, persistence, or pace. ECF No. 15, PageID.752.  On a related note, he faults the ALJ for finding only mild limitation in interacting with others, contending that the medical transcript actually supports a greater degree of social limitation.  *Id.*  at 753 (*citing* Tr. 91).

As a threshold matter,  the ALJ was not required to use VE testimony in making her "Step Four" determination that Plaintiff was capable of returning to his past relevant work as a counter helper. *Studaway v. Health and Human Services*, 815 F.2d 1074, 1076 (6th Cir. 1987); *Mays v. Barnhart*, 78 Fed. Appx. 808, 813–814, 2003 WL 22430186, *4 (3rd Cir. October 27, 2003)("At step four of the sequential evaluation process, the decision to use a vocational expert is at the discretion of the ALJ").  Although the use of a VE is optional in making a Step Four finding, "the propriety of the hypothetical question ... is a proper concern for the Court, since it may furnish relevant information that the ALJ may consider in determining whether the plaintiff could do her past work." *Merkel v. Commissioner of Social Sec.*, 2008 WL 2951276, *4 (E.D. Mich. July 29, 2008) (Lawson, J.)(*citing* 20 C.F.R. § 404.1560(b)).

Plaintiff is correct that a hypothetical question forming the basis of the RFC found in the administrative opinion constitutes substantial evidence only if it accurately reflects

-13-

the claimant's physical and mental impairments. *Ealy v. Commissioner of Social Sec.*, 594

F.3d 504, 516 (6th Cir. 2010). While the Sixth Circuit has rejected the proposition that all

of the claimant's maladies must be listed verbatim, "[t]he hypothetical question ... should

include an accurate portrayal of [a claimant's] physical and mental impairments." *Webb*

*v. Commissioner of Social Sec.*, 368 F.3d 629, 632 (6th Cir. 2004). It is well settled that

vocational testimony given in response to a question that does not include all of a

claimant's relevant limitations does not constitute substantial evidence. *Varley v.*

*Commissioner of Health and Human Services*, 820 F.2d 777, 779 (6th Cir. 1987).

However, the ALJ is not required to incorporate unsubstantiated claims in hypothetical

question to VE or by extension, the ultimate RFC. *Stanley v. Secretary of Health and*

*Human Services*, 39 F.3d 115, 118–119 (6th Cir. 1994).

　　　As determined in the present case,  "moderate" limitation in concentration,

persistence, or pace (as opposed to a finding of mild or no limitation) implies some degree

of work-related impairment.  *Edwards v Barnhart*,  383 F Supp 2d 920, 930 (E.D. Mich.

2005)(Friedman, J.)(*citing Webb*, *supra*, 368 F.3d at 633). As such, the ALJ's finding of

moderate concentrational limitation as a result of anxiety (Tr. 92) must be accounted for

in the hypothetical question posed to the VE.  *Id.*  In *Edwards,* the Court found that the

hypothetical modifiers of "simple, routine, unskilled work" were insufficient to account

for moderate limitation in concentration, persistence, or pace. *Id.* at 930.

　　　Citing *Edwards,* Plaintiff contends that in the current case, the hypothetical

-14-

modifiers of unskilled work limited to "simple, routine tasks, with no fast paced production work" are also insufficient to capture his moderate concentrational abilities (Tr. 123). However, *Edwards* does not require more stringent restrictions than found in the current hypothetical question. First, *Edwards* cannot be read to impose a bright line rule for accounting for moderate concentrational deficiencies. Plaintiff's argument that the above modifiers in this case are automatically insufficient to account for moderate concentrational limitations is not supported by Sixth Circuit case law or cases from this District. *See Smith-Johnson v. Commissioner of Social Sec.,* 579 Fed. Appx. 426, 437, 2014 WL 4400999, *10 (6th Cir. September 8, 2014)(moderate concentrational limitations adequately addressed by restricting the claimant to unskilled, routine, repetitive work); *Bellman v Commissioner of Social  Sec*, 2019 WL 1521994, at *8 (E.D. Mich. March 20, 2019)(Grand, M.J.), *report and recommendation adopted* No. 18-10872, 2019 WL 1515258 (ED Mich, April 8, 2019)("Because there is no bright-line rule requiring an ALJ to account for moderate [concentrational] limitations . . . in a certain way, the Court must – given the particular evidence in the case at hand – determine whether the limitations imposed by the ALJ adequately accounted for" the moderate limitation).   Second, the restrictions set forth in the present hypothetical question unskilled work limited to "simple, routine tasks, with no fast paced production work" (Tr. 123) are greater than those in *Edwards*  restricting the claimant to simple, routine, unskilled work. Assuming that *Edwards* actually set forth a hard and fast rule for accounting for concentrational

-15-

limitations, the added restriction of "no fast paced production work" further accounts for moderate deficiencies in "persistence" or "pace."

Third, the transcript does not support the inclusion of additional hypothetical restrictions. The ALJ correctly noted that while Plaintiff alleged that he became "mixed up and frustrated," the mental status examinations showed that he was "alert and oriented, responding appropriately to questions, and able to follow commands" (Tr. 92). The ALJ noted elsewhere that Plaintiff was able to take his sister-in-law to doctors' appointments and to play pool on a regular basis (Tr. 91, 95). The ALJ cited the treating records showing good results from prescribed psychotropic medication (Tr. 95). The ALJ's conclusions are consistent with my own review of the record showing that Plaintiff was able to babysit for a friend's son (Tr. 396); had a cooperative demeanor and clear speech (Tr. 572, 606-607); and experienced only mild psychological limitation (Tr. 675).

For overlapping reasons, the ALJ did not err in finding that Plaintiff did not experience more than mild limitation in interacting with others (Tr. 91). While Plaintiff alleged that he did not like being around others, the ALJ cited treating records showing that Plaintiff was consistently "pleasant and cooperative" and communicated appropriately (Tr. 91). The ALJ noted that Plaintiff was able to play pool with a small group at a bar twice a week; take his mother and sister-in-law shopping; and take his sister-in-law to doctors' appointments - all activities required some degree of interaction with the individuals outside of his family (Tr. 91). My own review of the record (discussed above

in Section II.B.) does not show evidence of more than mild limitation in interacting with others.  By Plaintiff's own account, he did not lose his job as a counter helper due to social limitations, but rather due to his supervisor's erroneous belief that Plaintiff  was responsible for a missing pool cue (Tr. 110).

In closing, I note that while the record supports some degree of physical and psychological limitation, the determination that these conditions were not work-preclusive is well within the "zone of choice" accorded to the fact-finder at the administrative hearing level and thus, should not be disturbed by this Court.  *Mullen v. Bowen*, *supra*.

## VI.  CONCLUSION

For the reasons stated above, I recommend that Defendant's motion for summary judgment [Docket #16] be GRANTED and that Plaintiff's motion [Docket #15] be DENIED.

Any objections to this  Report and Recommendation must be filed  within 14 days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir.  1991); *United States v. Walters,* 638 F.2d 947 (6th Cir.  1981).  Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir.  1991); *Smith*

*v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987).

Any objections must be labeled as "Objection #1," "Objection #2," etc., and any objection must recite *precisely* the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party must file a concise response proportionate to the objections in length and complexity. The response must specifically address each issue raised in the objections, in the same order and labeled as "Response to Objection #1," "Response to Objection #2," *etc.*

s/R. Steven Whalen
R. STEVEN WHALEN
United States Magistrate Judge

Dated: July 13, 2020

CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was sent to parties of record on July 13, 2020 electronically and/or by U.S. mail.

s/Carolyn M. Ciesla
Case Manager